# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT JOSEPH MATTSON,

        Defendant-Appellant.

UNPUBLISHED
July 11, 2017

No. 331312
Lenawee Circuit Court
LC No. 15-017437-FH

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of assault of a person by strangulation, MCL 750.84(1)(b). He was sentenced to 23 to 120 months' imprisonment for his conviction. We affirm.

## I. SCORING ERROR CHALLENGES

Defendant argues that the trial court improperly assessed offense variable (OV) 3 (physical injury), OV 4 (psychological injury), OV 7 (aggravated physical abuse), OV 8 (asportation), and OV 13 (continuing pattern of criminal behavior), which resulted in an inflated sentencing guidelines range entitling him to a remand for resentencing. We disagree.

Under a preserved scoring error challenge, "the trial court's findings of fact are reviewed for clear error, and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (citation and quotation marks omitted). We review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . ." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "[I]f the trial court clearly erred in finding that a preponderance of the evidence supported one or more of the OV's . . . [*Hardy*, 494 Mich at 438], and if the scoring error resulted in the alteration of the minimum sentence range, [defendant] would be entitled to resentencing, People v Francisco, 474 Mich 82, 89; 711 NW2d 44 (2006)." *People v Biddles*, 316 Mich App 148, 156; ___ NW2d ___ (2016).

## A. OV 3

-1-

Defendant first argues that the trial court improperly assessed 10 points for OV 3 because no evidence existed that established the victim received medical treatment for her injuries. MCL 777.33(1) provides the offense scoring for OV 3, which addresses physical injury to a victim. A trial court may assess 10 points for OV 3 if the victim sustained a bodily injury requiring medical treatment. MCL 777.33(1)(d). "'[B]odily injury' encompasses anything the victim would, under the circumstances, perceive as some unwanted physically damaging consequence," *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011), and "'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment," MCL 777.33(3).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *McChester*, 310 Mich App at 358. "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

Evidence at trial established that defendant choked the victim twice and struck her in the head at least five times. The victim testified that she lost consciousness during one of the choking incidents. Adrian Police Officer Jonathan Genter testified that when he arrived at the scene, the victim stated she was "lightheaded," which prompted him to seek medical attention for her. Indeed, the victim was examined at the crime scene by medical personnel.

MCL 733.33(3) merely requires that medical treatment is necessary irrespective of whether the treatment is actually obtained. Defendant mistakenly relies on *People v Armstrong*, 305 Mich App 230, 246; 852 NW2d 856 (2014), for the proposition that a 10-point assessment is improper for OV 3 where there is no evidence presented that medical treatment was necessary. The *Armstrong* Court declined to hold a 10-point assessment proper where neither the victim nor any responding police officers testified to the victim receiving medical treatment. *Armstrong*, 305 Mich App at 246. *Armstrong* is factually distinguishable from this case, because Officer Genter testified that the victim received medical treatment on the scene. In light of the victim's potential head injuries and Genter's testimony, sufficient evidence existed for the trial court to establish that the victim sustained a bodily injury requiring medical treatment. Therefore, the trial court properly assessed OV 3 at 10 points.

## B. OV 4

Second, defendant argues that the trial court improperly assessed 10 points for OV 4 because no record evidence existed to support a finding of serious psychological injury. MCL 777.34(1) provides the offense scoring for OV 4, which addresses psychological injury to a victim. OV 4 may be assessed at 10 points if "serious psychological injury requiring professional treatment" has occurred. MCL 777.34(1)(a). In regards to the scoring of 10 points, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). A victim's expression of "fearfulness" during an incident is sufficient to support an assessment of 10 points under MCL 777.34(1)(a). *Earl*, 297 Mich App at 109; see also *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004) (providing that OV 4 was properly assessed at 10 points because the victim testified she was fearful *during* the incident).

The trial court may not assess OV 4 at 10 points based on an assumption "that someone in the victim's position would have suffered psychological harm . . . " *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). However, ample record evidence existed in this case to support a finding of the victim's fearfulness *during* the incident.

The victim testified that she was "scared" of defendant when she returned home from her neighbor's birthday party because he was extremely intoxicated. The victim explained that in the process of putting her children to sleep, she opened a window in case she needed to scream for help because defendant had confiscated her telephone. After escaping defendant's grasp during one of the choking incidents, the victim cried out for help because she "thought [defendant] was going to kill [her]." The victim's testimony and actions demonstrated her fearfulness during the incident. The trial court properly inferred that the victim may require future psychological treatment based on the traumatic events that night. Therefore, the trial court properly assessed OV 4 at 10 points.

## C. OV 7

Third, defendant argues that the trial court improperly assessed 50 points for OV 7 because no record evidence was presented that defendant treated the victim with sadism, torture, or excessive brutality, and that defendant's conduct was not designed to substantially increase the victim's fear and anxiety. MCL 777.37(1) governs aggravated physical abuse and provides the offense scoring for OV 7. In relevant part, at the time defendant committed the offense, MCL 777.37(1)[1] provided that a 50-point assessment was appropriate where "[a] victim was treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

In scoring OV 7, a court must focus solely on conduct that occurred during the offense. *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016). MCL 777.37(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." "Excessive brutality" is not defined by the statute, but this Court has held that it means "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *Hardy*, 494 Mich 430 (2013). A 50-point assessment has been held proper for OV 7 where the defendant choked the victim a number of times, cut her, dragged her, hit her, and kicked her over the course of several hours. *People v Wilson*, 265 Mich App 386, 396-398; 695 NW2d 351 (2005).

Evidence established that defendant grabbed the victim from behind and placed her in a "sleeper hold" before choking her to the point she lost consciousness. Defendant dragged the victim into a bedroom where he "dropped [her] on the ground." The victim testified that when she regained consciousness, defendant was standing near her laughing and berating her. When the victim tried to get away, defendant followed her upstairs, spit in her face, shoved her, grabbed her by the neck again, and held her head out of a second story window. Defendant's actions took place over the course of several hours.

---

[1] MCL 777.37(1)(a) and (b) were amended by 2015 PA 137, effective January 5, 2016, which was the date of defendant's sentencing hearing. However, the date of the offense was March 25, 2015. We review a trial court's decision in light of the version of the statute that existed at the time of the offense. See MCL 769.34(2).

A person commits assault by strangulation by "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(1)(b) and (2). Defendant engaged in conduct beyond the minimum necessary to commit the offense and it is clear that defendant felt immensely gratified as evidenced by his laughter as the victim was on the ground unconscious. Therefore, sufficient evidence existed for the trial court to infer by a preponderance of the evidence that the victim was treated with "sadism, torture, excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Accordingly, the trial court properly assessed OV 7 at 50 points.

## D. OV 8

Fourth, defendant argues that the trial court improperly assessed 15 points for OV 8 because no record evidence existed that the victim was asported to a place or situation of greater danger, or that she was held captive longer than necessary to commit the offense. MCL 777.38(1) addresses asportation or captivity of a victim and provides the scoring for OV 8. In relevant part, MCL 777.38(1) provides that a 15-point assessment is proper where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense."

With respect to asportation, the Michigan Supreme Court recently overruled *People v Spanke*, 254 Mich App 642; 658 NW2d 504 (2003), and *People v Thompson*, 488 Mich 888; 788 NW2d 677 (2010), to the extent that they stand for the proposition that asportation does not occur if the movement is incidental to the commission of the offense. *People v Barrera*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 151282), slip op at 2-3, 8. Contrary to defendant's assertion that incidental movement is insufficient to score 15 points, the *Barrera* Court held that "movement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation under OV 8." *Id*. at ___; slip op at 8. "A victim is asported to a place or situation involving greater danger *when moved away from the presence or observation of others*." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014) (emphasis added).

The victim testified that defendant began choking her in the kitchen before dragging her into the master bedroom. Whether merely incidental or meaningfully deliberate, the trial court could reasonably infer by a preponderance of the evidence that defendant moved the victim to the bedroom where his actions would be less likely to be discovered by their children or others. Therefore, the trial court properly assessed 15 points for OV 8.

## E. OV 13

Finally, defendant argues that the trial court improperly assessed OV 13 at 25 points because no evidence existed to support a finding that he committed two additional felonies, other than the instant offense, within a five-year period. MCL 777.43(1) addresses continuing pattern of criminal behavior and provides the offense scoring for OV 13. In relevant part, MCL 777.43(1) provides that a 25-point assessment is proper where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person."

In scoring OV 13, MCL 777.43(2)(a) directs a trial court to consider "all crimes within a 5-year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." Additionally, "[a] sentencing court is free to consider charges that were earlier dismissed if there is a preponderance of the evidence supporting that the offense took place." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (citations omitted).

At sentencing, the trial court noted that defendant had also been charged, in a separate case, of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and assault with intent to do great bodily harm (AWIGBH), MCL 750.84(1)(a), against the victim, which are both felonies. Shortly thereafter, defendant pleaded guilty to misdemeanor aggravated assault, MCL 750.81a, and the trial court dismissed the felony charges. The sentencing judge explicitly asked defendant if he wished to challenge the accuracy of any of the information contained in the presentence information report to which defendant replied, "No, ma'am."

Under MCL 750.520d(1)(b), "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if . . . [f]orce or coercion is used to accomplish the sexual penetration." Moreover to prove AWIGBH, a prosecutor must prove: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks omitted). Intent to do great bodily harm less than murder is defined as "an intent to do serious injury of an aggravated nature." *Id*. (quotation marks omitted). "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. at 629.

The PSIR states that approximately one month before this incident, defendant forced the victim to perform oral sex "and while doing so he took a picture and sent it to her friend, Gregory Cox." At the sentencing hearing, defendant admitted that he and the victim got into a "heated argument" where he assaulted her and kicked her in the shin. In light of defendant's testimony and the information contained within the PSIR, the trial court could reasonably infer by a preponderance of the evidence that sufficient evidence existed to support a finding that CSC-III and AWIGBH took place even though the charges were ultimately dismissed. See *Nix*, 301 Mich App at 205. Moreover, defendant was ultimately convicted of a felony in this case, totaling three felonies committed against the victim in a relatively short period of time. Therefore, the trial court properly assessed 25 points for OV 13. In sum, defendant is not entitled to a remand for resentencing because the trial court properly assessed OVs 3, 4, 7, 8, and 13.

## II. ADJOURNMENT OF TRIAL AND CHOICE OF COUNSEL

In his Standard 4 Brief, defendant argues that the trial court denied him the constitutional right to counsel by refusing to grant an adjournment so that his retained counsel could have time to prepare and appear at trial. We disagree.

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and

principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Additionally, we review constitutional issues de novo. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009).

"[T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). "No adjournments, continuances[,] or delays of criminal cases shall be granted by any court except for good cause shown . . . ." MCL 768.2. To determine whether "good cause" has been shown, a trial court may look to the following factors: "(1) [whether the defendant] asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Coy*, 258 Mich App at 18. However, "[e]ven with good cause and due diligence [shown], the trial court's denial of a request for an adjournment or continuance is not grounds for a reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. at 18-19.

The Sixth Amendment right to counsel affords a criminal defendant who does not require appointed counsel the right to retain counsel of his choice. *United States v Gonzalez-Lopez*, 548 US 140, 144; 126 S Ct 2557; 165 L Ed 2d 409 (2006). When a defendant seeks to adjourn a trial to replace or retain counsel, a trial court must carefully balance the defendant's right to select his own counsel with the public's interest in the orderly administration of justice. *United States v Burton*, 584 F2d 485, 489 (DC Cir, 1978). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 US at 152 (citations omitted).

"[The trial] court . . . is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case." *Burton*, 584 F2d at 490. "The evaluation of appellant's need for additional counsel, and the balance between the right to select counsel and the public's interest in the orderly administration of justice must all be carefully and delicately weighed; *but sitting as a court of review, we afford substantial discretion to the trial court in judging that balance, and we will not reverse absent a showing of a deprivation of the defendant's right*." *Id*. at 492 (emphasis added).

The trial court did not abuse its discretion by denying defendant's request for an adjournment and did not deprive defendant of his right to counsel. Although defendant asserted a constitutional right in seeking an adjournment and had not sought an adjournment previously, he did not have a legitimate reason for asserting a constitutional right and he was arguably negligent. Defendant was arraigned on April 22, 2015, but failed to retain counsel until the week before trial began on November 3, 2015. Defendant first expressed his displeasure with appointed counsel on August 6, 2015, when he requested new counsel. However, despite his general expression of discontent, defendant did not make any specific claim that defense counsel was unprepared, incompetent to try the case, or that he and defense counsel had irreconcilable differences. When the trial court inquired further into defendant's ability to retain counsel, defendant stated that he was not in the position to retain counsel.

On August 19, 2015, the trial judge adjourned defendant's original trial date, which was set for August 20, 2015, because she had learned that the victim was in jail on charges of her

-6-

own. The trial judge reasoned that adjournment was necessary, under the circumstances, in the interest of judicial economy. On September 4, 2015, at a motion hearing relating to a bond issue, defendant expressly stated that he was satisfied with appointed counsel's performance. Defendant made no mention of his interest in seeking retained counsel. It was not until the first day of trial, on November 3, 2015, that defendant mentioned that he had retained counsel and no longer wanted appointed counsel's representation.

When the trial judge asked defendant where his retained counsel was, he replied that she would not arrive until 11:00 a.m. although the trial was scheduled to begin at 9:00 a.m. Defendant was unequivocally informed that his trial was set for November 3, 2015, at 9:00 a.m. several months prior. The trial court ultimately denied defendant's request for adjournment, reasoning that it did not have an appearance from defendant's retained counsel, defendant was well aware of the scheduled trial date and should have relayed that information to retained counsel, and the case had been on its docket for approximately six months. Considering the totality of the circumstances, it was reasonable for the trial court to conclude that further delay of the case was unnecessary.

Defendant had ample time to obtain retained counsel, and even if he was limited by financial restrictions until the week before his trial began, his retained counsel had reasonable time prepare. By waiting so long to inform the trial court of his desire to move forward with retained counsel, defendant placed the trial court in the position to balance his choice of counsel against the public's interest in the orderly administration of justice. See *id*. at 489. Therefore, the trial court's denial of defendant's request for adjournment fell within the range of reasonable and principled outcomes. See *Mahone*, 294 Mich App at 212. Defendant is unable to demonstrate that he was prejudiced as a result of the trial court's alleged error because the record reveals that defendant's retained counsel was added as cocounsel on the first day of his trial, indicating defendant was able to move forward with counsel of his choice. Accordingly, defendant was not denied his Sixth Amendment right to represented by an attorney of his choice.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective under a number of grounds. In his brief on appeal, defendant contends that defense counsel was ineffective for failing to object to the scoring of the OVs. Additionally, in his Standard 4 Brief, defendant argues that defense counsel was ineffective for (1) failing to investigate and present exculpatory evidence, fact witnesses, and expert witnesses, (2) failing to prepare and file a motion to quash the information and dismiss the case, and (3) advising defendant not to testify at trial. We disagree.

Because defendant failed to move for a new trial or for a *Ginther*[2] hearing in the lower court, the issue is unpreserved for appellate review. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

novo. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted). When a claim of ineffective assistance of counsel is unpreserved for appellate review, our review is limited to errors apparent on the record. *Id*. "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). Additionally, a defendant's burden includes the burden of persuasion in establishing a factual predicate for his claim. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

## A. FAILURE TO OBJECT TO SCORING OF OVS

Trial counsel is not required to make a meritless objection. *Chelmicki*, 305 Mich App at 69. Despite defendant's assertion that defense counsel failed to object to the trial court's assessment of the OVs, the record clearly demonstrates that defense counsel objected, in relevant part, to the scoring of OV 4, OV 7, and OV 8 in a sentencing memorandum. Although defense counsel did not object on the record to the scoring of the challenged OVs, she was not required to make a meritless objection because the trial court's assessment of the OVs was proper as discussed in more detail in Issue I. See *id*. Therefore, defendant is unable to demonstrate that defense counsel's performance fell below an objective standard of reasonableness. Even if defendant had successfully shown that defense counsel's performance was deficient, he is unable to establish that he was prejudiced by the alleged error. See *Vaughn*, 491 Mich 669. Because the OVs were properly assessed, it is likely the trial court would have denied such an objection raised by defense counsel.

## B. EXCULPATORY EVIDENCE, FACT WITNESSES, AND EXPERT WITNESSES

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Generally, "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation and quotation marks omitted). A substantial defense is one that could have made a difference in the trial's outcome. *Id*. Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 53. However, trial counsel's decisions regarding what evidence to present and what witnesses to call at trial are presumed to be matters of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight

when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defendant has failed to establish a factual predicate for his claim, and thus, he fails to overcome the presumption that defense counsel provided effective assistance. See *Putman*, 309 Mich App at 248. The lower court record reveals that defense counsel conducted a reasonable investigation. On July 23, 2015, defense counsel sought discovery of any exculpatory evidence known to the prosecution. The next day, on July 24, 2015, defense counsel filed an amended witness list, which included Greg Cox and MacKenzie Miller. It was not until the August 18, 2015 pretrial hearing on the prosecution's use of MRE 404(b) evidence that defense counsel first learned of defendant's desire to call Travis Miller as a witness and the lower court record is devoid of any indication that defendant wanted "Ms. Cynthia" or any expert presented as a witness.

In fact, other than defendant's assertions in his Standard 4 Brief, the lower court record is devoid of any mention as to who defendant would have testify as an expert, what each witness would testify to, and the content of the alleged text messages or emails between Cox and the victim. Given the fact that the lower court record is inadequately supported to overcome the presumption that defense counsel employed sound trial strategy, defendant is unable to demonstrate defense counsel's performance fell below an objective standard of reasonableness. See *Vaughn*, 491 Mich at 669; *Davis*, 250 Mich App at 368.

Likewise, defendant fails to demonstrate that he was deprived of a substantial defense, thereby affecting the outcome of the proceeding. Even assuming that the fact witnesses would testify generally to the victim's purported "veracity and propensity to lie," and the unidentified experts would testify regarding domestic violence and injuries arising therefrom, defendant fails to show how such testimony would be admissible at trial because he failed to make an offer of proof. Similarly, defendant fails to establish how the alleged text messages and emails would be admissible at trial. Because the trial court would have likely denied the admission of defendant's sought evidence and testimony, and independent evidence existed establishing defendant's guilt, defendant fails to establish that, but for defense counsel's alleged error, the outcome of the proceeding would have been different. See *Vaughn*, 491 Mich at 669.

## C. FAILURE TO FILE A PRETRIAL MOTION

The decision to file a pretrial motion is a matter of trial strategy, *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001), which we will not second-guess, *Unger*, 278 Mich App at 242-243. Moreover, "[t]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

At the outset, defendant has waived his claim of ineffective assistance of counsel to the extent that he argues defense counsel failed to move to quash the information and dismiss the case because defendant has not properly presented this argument in his statement of questions presented. MCR 7.212(C)(5); see also *Fonville*, 291 Mich App at 383. Notwithstanding defendant's omission, the lower court record is devoid of any mention of the *in propria persona* motion to quash the information and dismiss the case that defendant discusses in his Standard 4

Brief. While the record indicates that, at the August 6, 2015 pretrial hearing, defendant expressed displeasure regarding defense counsel not filing motions for him, there is no specific mention of defendant's request that defense counsel file a motion to quash the information and dismiss the case.

Even if the record revealed that defense counsel failed to file such a motion, defendant would still be unable to demonstrate that defense counsel's performance fell below an objective standard of reasonableness. "[T]he primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it." MCR 6.110(E); *People v McGee*, 258 Mich App 683, 696; 672 NW2d 191 (2003). On April 10, 2015, defendant voluntarily waived his right to a preliminary examination and acknowledged that he would be bound over to the trial court on the charge brought against him. Because defendant was bound over to the trial court on a voluntary waiver, any effort by defense counsel to quash the information and dismiss the case would have been futile, and she was not required to file a futile motion. See *Fonville*, 291 Mich App at 384. Therefore, defendant's claim is without merit and he cannot establish that he was prejudiced because the jury found defendant guilty beyond a reasonable doubt of assault by strangulation, which demonstrates sufficient evidence existed to bind him over. See *Vaughn*, 491 Mich at 669.

## D. DECISION NOT TO TESTIFY

Both the United States Constitution and the Michigan Constitution confer upon a criminal defendant the right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). If a defendant intentionally relinquishes or abandons the right to testify by expressing satisfaction with his trial counsel's advice not to testify, the proclaimed error is deemed waived. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (stating that waiver is defined as the "intentional relinquishment or abandonment of a known right."); see also *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) ("[I]f [a] defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, 'the right will be deemed waived.'").

Again, defendant fails to overcome the presumption that defense counsel provided effective assistance. The lower court record reveals that there is no evidence that defendant was deprived of his constitutional right to testify. After the prosecution rested its case, the trial judge asked defendant if it was his choice not to testify. Defendant responded that he was both satisfied with the defense counsel's advice and clearly understood that the choice to testify was his to make. Therefore, defendant is unable to establish that defense counsel's performance fell below an objective standard of reasonableness, and he fails to establish that he was prejudiced. See *Vaughn*, 491 Mich at 669. Accordingly, there are no mistakes apparent from the record, and thus, defendant is not entitled to a remand for a *Ginther* hearing or a new trial on the basis of ineffective assistance of counsel. See *Lopez*, 305 Mich App at 693.

Finally, defendant contends that the cumulative effect of the above referenced errors constitutes ineffective assistance by defense counsel at trial. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App

58, 106; 732 NW2d 546 (2007). Because defendant failed to establish a claim for ineffective assistance of counsel, there can be no cumulative effect of errors necessitating reversal.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause