*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDY RUTH HAWKER,

        Defendant-Appellant.

UNPUBLISHED
April 13, 2023

No. 358975
St. Clair Circuit Court
LC No. 20-001829-FH

Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of resisting and obstructing a police officer, MCL 750.81d(1), and her sentence of 12 months' probation and 20 hours of community service. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a report to police that defendant was drunk and suicidal. Port Huron police officers Dennis Fitzsimmons and Ashley Marcano tracked defendant's cell phone to a gas station and went to see her. The officers saw a van belonging to defendant parked at a gas pump, and saw defendant inside the gas station. The officers approached defendant—who smelled of alcohol, was slurring her words, and was visibly distraught—and took her into protective custody.[1] Defendant was handcuffed and taken to a patrol vehicle to be interviewed. During the interview, defendant displayed increasing signs of instability and potential suicidal thoughts, and the officers determined she needed treatment at the hospital. After they told defendant that they were transporting her to the hospital, defendant became irate and uncooperative, and demanded to be arrested instead. The officers later testified that defendant had to be restrained at the hospital

---

[1] Protective custody is defined as: "The government's confinement of a person for that person's own security or well-being, such as a witness whose safety is in jeopardy or an incompetent person who may harm him- or herself or others." *Black's Law Dictionary* (11th ed).

because she would not comply with the directions of the hospital staff and, while the officers attempted to assist them, defendant kicked, hit, and scratched the officers.

At trial, the witnesses testified to the facts underlying defendant's charges. Defendant moved for a directed verdict, arguing her detention was unlawful because the officers did not personally observe behavior which would lead them to conclude defendant needed mental health treatment, and, therefore, she was entitled to resist them. The trial court denied the motion, and the jury found defendant guilty. Defendant moved for a new trial, but the trial court denied the motion. This appeal followed.

## II. RIGHT TO RESIST

Defendant argues there was insufficient evidence to sustain her conviction because the officers did not personally observe any behavior warranting taking her into protective custody, and, therefore, she was entitled to resist them. We disagree.

## A. STANDARD OF REVIEW

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

> But more importantly, "[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." [*Id*. (citation omitted, alteration in original).]

"It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (citation omitted). "This Court reviews for an abuse of discretion the trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." *In re Tchakarova*, 328 Mich App 172, 183; 936 NW2d 863 (2019) (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

Defendant was convicted of assaulting, resisting, and obstructing a police officer.

> To convict a defendant under MCL 750.81d(1), the prosecution must prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed,

-2-

opposed, or endangered was a police officer performing his or her duties." [*People v Morris*, 314 Mich App 399, 413-414; 886 NW2d 910 (2016) (citation omitted).]

" 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). MCL 750.81d(1) does not abrogate the common-law right to resist police engaged in illegal conduct, and, therefore, "the prosecution must establish that the officers' actions were lawful." *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012). On appeal, defendant argues she had a common-law right to resist because the officers unlawfully placed her in protective custody.

MCL 330.1427 describes the circumstances which must be present to take an individual into protective custody:

> (1) If a peace officer observes an individual conducting himself or herself in a manner that causes the peace officer to reasonably believe that the individual is a person requiring treatment, the peace officer may take the individual into protective custody and transport the individual to a preadmission screening unit designated by a community mental health services program for examination under section 429 or for mental health intervention services. . . . [MCL 330.1427(1) (citation omitted).]

A "person requiring treatment," in regards to this case, is defined as:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation. [MCL 330.1401(1)(a).]

"Mental illness means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." *Tchakarova*, 328 Mich App at 183 (quotation marks and citation omitted).

In addition to protective custody, there are other reasons officers may detain an individual. One notable reason is a brief, investigative stop under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968) (a "*Terry* stop"). Under *Terry*, "a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). "A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot." *Id*.

Defendant argues on appeal the officers did not observe any behavior that warranted placing her in protective custody. Therefore, she was unlawfully detained under MCL 330.1427(1). We disagree. Defendant characterizes the entire episode as a protective custody detention under MCL 330.1427. However, there were two phases to defendant's interaction with the officers. The first was a brief, investigative stop under *Terry*. The second was when defendant was placed in protective custody. Because defendant was lawfully detained throughout the entire interaction, she lacked the common-law right to resist the officers.

The first phase of the interaction occurred when the officers arrived at the gas station. They approached defendant inside the gas station. She was visibly upset, but was not engaging in any otherwise disruptive behavior. After confirming defendant's identity, the officers placed defendant in handcuffs. Explaining why she had handcuffed defendant, Marcano testified at trial: "I didn't want to, you know, have her exit the gas station and dart off into traffic or try and run back into her van." Given the witness's statements about defendant's behavior, the officers had a "reasonably articulable suspicion" that defendant had driven drunk to the gas station, and had the reasonable fear she would drive drunk from the gas station if they did not intervene. Thus, the first phase was a lawful *Terry* stop.[2]

The second phase of the interaction occurred later, after Fitzsimmons spoke with defendant in the back of his patrol vehicle. During his discussion with defendant, Fitzsimmons observed defendant become increasingly upset and unstable, wondering aloud why she was there while others were gone. While defendant denied telling the witness she was going to drive into the back of a semi, she clarified she told him she "probably should." At this point, the detention transformed into protective custody, because defendant's behavior indicated she was unstable and possibly suicidal. Indeed, her behavior in the back of the patrol vehicle suggested she was unable "to cope with the ordinary demands of life." *Tchakarova*, 328 Mich App at 183.

Contrary to her arguments on appeal, defendant was never unlawfully detained. The first phase was lawful under *Terry* stop principles, and defendant was lawfully placed in protective custody during the second phase. Therefore, defendant's actions occurred while she was lawfully in police custody, and she did not have the right to resist. *Moreno*, 491 Mich at 51-52. Furthermore, because defendant's detention was lawful at the time she resisted and obstructed the officers, any possible confusion concerning what the officers "observed" is irrelevant. Reviewing the facts in a light most favorable to the prosecution, and analyzing this case with the requisite deference to the trial court and jury, defendant's detention at the time she resisted and assaulted the officers was lawful, and she therefore had no common-law right to resist.

## III. UNANIMITY INSTRUCTION

Defendant further argues that (1) the trial court erred by failing to provide a specific unanimity instruction, (2) and her counsel was ineffective for failing to request one. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant first argues the trial court erred in failing to offer a specific unanimity instruction. Defendant did not object at trial to the lack of a specific unanimity instruction. Therefore, this issue is not preserved for appellate review. *People v Gonzalez*, 256 Mich App 212,

---

[2] We recognize that at the time the officers handcuffed defendant they told her that they were putting her in "protective custody." However, given the officers suspected that defendant was engaged in criminal activity and the absence of any erratic behavior at this point, this first phase of the interaction is more fairly characterized a "detention" rather than "protective custody."

225; 663 NW2d 499 (2003). This unpreserved issue is reviewed for "plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

However, defendant goes on to argue trial counsel was ineffective for failing to raise the issue of the unanimity instruction. A defendant preserves a claim of error predicated on ineffective assistance of counsel by either moving for a new trial or for a *Ginther*[3] hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant preserved her claim of ineffective assistance of counsel by raising the issue of the unanimity instruction in her motion for a new trial. "A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Id*. at 671-672. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

## B. LAW AND ANALYSIS

Criminal defendants in Michigan are guaranteed the right to a unanimous jury verdict. Const 1963, art 1, § 14; see also *Chelmicki*, 305 Mich App at 67. "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Chelmicki*, 305 Mich App at 67-68. "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity." *Id*. at 68. "However, a specific unanimity instruction may be required in cases in which more than one act is presented as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion." *Id*. (quotation marks and citation omitted). "[W]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *Id*. (quotation marks and citation omitted).

> [A] specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. The critical inquiry is whether either party has presented evidence that *materially* distinguishes any of the alleged multiple acts from the others. In other words, where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice. [*People v Cooks*, 446 Mich 503, 512-513; 521 NW2d 275 (1994) (citation omitted).]

Defendant's first argument that the trial court plainly erred by failing to include a specific unanimity instruction is an appellate parachute. Indeed, "a party may not harbor error at trial and then use that error as an appellate parachute." *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010). Defendant submitted proposed jury instructions, which did not include a specific unanimity instruction, and her counsel affirmatively stated on the record that he was satisfied with the instructions after the trial court provided them to the jury. Because defendant's counsel

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

expressly consented to the proposed jury instructions, analysis of this issue is an appellate parachute, which is waived for our review. *Szalma*, 487 Mich at 726.

Defendant also contends her counsel was ineffective for failing to object to the proposed jury instructions. Therefore, we next consider the same issue in the context of ineffective assistance of counsel. Defendant was convicted of assaulting, resisting, and obstructing a police officer under MCL 750.81d(1), which requires the prosecution to prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed,[4] opposed, or endangered was a police officer performing his or her duties." *Morris*, 314 Mich App at 413-414 (citation omitted). Defendant argues that a unanimity instruction was required because the charge arose from "multiple acts" involving different victims. Defendant contends these were "distinct" acts, and therefore the trial court was required to instruct the jury as to each act.

As noted, a unanimity instruction is only necessary where "more than one act is presented as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence." *Chelmicki*, 305 Mich App at 68. Although the prosecution in this case presented evidence that defendant assaulted the multiple officers in multiple ways— hitting, kicking, refusing to comply with commands—it is important to note defendant's conduct occurred over the course of about one hour with multiple instances of resisting or assaulting the officers, and the entire event arose out of her detention and resistance to being taken to the hospital. The proofs offered by the prosecution of defendant's actions were virtually identical, and generally fell within a single transaction. The evidence indicates both Fitzsimmons and Marcano were involved trying to transport defendant to, and trying to restrain defendant in, the hospital. While there were some brief moments where one officer may have stepped away, it was never long enough to create a separate situation involving only the remaining officer, and, "regardless of which officer each member of the jury had in mind, all 12 jurors determined that defendant had knowledge he was resisting or obstructing a police officer." *Morris*, 314 Mich App at 413 n 8. Thus, a unanimity instruction was not required.

Finally, to establish ineffective assistance of counsel, "a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020). But, the "[failure] to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich

---

[4] Again, " '[o]bstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7).

App 192, 201; 793 NW2d 120 (2010). Even if defendant's counsel raised the issue of the unanimity instruction at trial, the argument would have been futile. Therefore, counsel was not ineffective for failing to raise the issue.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Stephen L. Borrello