*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MISSIERRA MONIQUE JONES,

Defendant-Appellant.

UNPUBLISHED
April 20, 2026
1:51 PM

No. 373059
Oakland Circuit Court
LC No. 2023-285815-FH

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Missierra Jones, appeals as of right her jury-trial conviction of felonious assault, MCL 750.82. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On November 23, 2022, Fredericka Shields, who was driving a red Porche, merged onto I-696. At the time, the road was under construction, so there was only one lane. Someone sounded their horn as she merged, but Shields kept driving. After approximately one mile, she saw a tan Equinox rapidly approach her. The Equinox drove in front of her and then slowed down. Shields responded by swerving around it. The Equinox driver then pulled up alongside the driver's side of Shields's Porsche. Shields testified that the front passenger window of the Equinox was rolled down and that the driver of the Equinox, a "black woman," had a gun in her hand. She said that the woman waved the gun at her and pointed it at her. Shields testified that she feared for her life. The Equinox then drove away. Shields followed, called 911, and reported the incident and the license plate of the Equinox. Eventually, she stopped following the Equinox.

That same day Shields was interviewed by a Michigan State Police trooper. She detailed the incident and advised him of the license plate number of the Equinox. Using that information, the trooper was eventually able to ascertain Jones's address. Although Jones did not initially recall the incident, when the trooper mentioned Shields's red Porsche, Jones admitted that she was the driver of the Equinox involved in the incident. She told the trooper that the operator of the Porsche was driving recklessly, cutting her off and swerving into lanes without signaling. Jones had a Concealed Pistol License (CPL) and presented the paperwork for her gun to the trooper; however,

she denied having the gun in her car on the date of the altercation. She told the trooper that she had sold the Equinox, and the gun was in her new car. The trooper seized the gun from her new car.

Following trial, Jones was convicted of a single count of felonious assault. This appeal follows.

## II. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Jones argues that her lawyer provided ineffective assistance by failing to move to suppress her gun and by failing to object to improper arguments by the prosecution in closing and rebuttal argument that amounted to prosecutorial misconduct. "When no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

## B. ANALYSIS

In order to show that his or her lawyer provided ineffective assistance, the defendant must establish (1) that the lawyer's "performance was deficient" and (2) that the "deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010) (quotation marks and citation omitted). A lawyer's "performance was deficient if it fell below an objective standard of professional reasonableness." *Id*. The defense is prejudiced by deficient performance "if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different." *Id*. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). The defendant also bears the burden of establishing the factual predicate for his or her claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## 1. MOTION TO SUPPRESS

Jones argues that her lawyer provided ineffective assistance by failing to move to suppress her gun from evidence. The record, however, reflects that Jones's lawyer moved to suppress the gun from evidence as soon as it became apparent that the prosecutor intended to admit it into evidence. Accordingly, there is no factual basis for Jones's claim that her lawyer's performance was deficient for failing to move to suppress the gun.

Further, to the extent that Jones is arguing that her lawyer should have moved to suppress the gun before trial, we conclude that Jones's lawyer's performance was not deficient. Decisions regarding which motions to file are matters of trial strategy. *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). This Court will not substitute its judgment for that of the defendant's lawyer regarding matters of trial strategy, nor will we assess the defense lawyer's competence with

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Here, after it became apparent at trial that the prosecutor was going to move to admit the gun into evidence, Jones's lawyer moved to suppress it, arguing that it had been seized in violation of the Fourth Amendment's prohibition of warrantless searches and seizures. Given the detailed nature of his argument, it is clear that he was familiar with the circumstances surrounding the seizure of the gun. He also explained that he did not move for suppression earlier because there had been no indication prior to trial that the prosecutor intended to introduce the gun at trial. On this record, Jones's lawyer's decision to not move to suppress in a pretrial motion did not fall below an objective standard of reasonableness.

Finally, regardless of the timing of the motion to suppress, Jones cannot demonstrate that, but for the allegedly deficient performance, the outcome of the trial would have been different. Here, her statement to the police was admitted into evidence. In her statement, she stated that she owned a gun and that she sometimes had the gun in her vehicle. At trial, she did not dispute owning a gun at the time that the altercation occurred. Rather, she argued that it was not in the vehicle at the time of the altercation. The physical evidence of the gun, therefore, served only to corroborate her undisputed statement to the police. As such, it is not reasonably probable that the outcome of the trial would have been different if the gun had been suppressed.[2] See *Fyda*, 288 Mich App at 450.

## 2. FAILURE TO OBJECT

On appeal, Jones argues that the prosecutor committed misconduct during his closing argument by stating that Shields was "telling the truth." She maintains that the argument amounted to improper vouching for Shields's credibility. A "prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, a prosecutor's statements are not considered in the context in which they are made, not in isolation. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Here, the prosecutor argued:

> What reason would Ms. Shields have to make this up? How did she know that [Jones] owns a firearm? A small, compact, black firearm. She's never met her before. She's never seen her before. She's never seen her since until this Court proceeding. So she just picks up the phone one day and decides to say this person has a gun, and they pointed it at me during this incident in which we were weaving in and out of each other. There are too many coincidences. There are too many stars that would have to align for her to just guess and make that up, because she didn't make it up, she's telling the truth. She told you the truth and that's not me saying that. The evidence shows that and that's the circumstantial evidence.

Thus, viewed in context, it is clear that the prosecutor did not claim to have some special knowledge as to Shields's truthfulness. Rather, he contended that, consideration of the evidence

---

[2] Given our resolution, we need not address the prosecutor's alternate argument that a warrantless search was permissible in this case.

admitted led to the conclusion that Shields was truthful. That argument, which is based upon the properly admitted evidence, is not improper. See *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) (stating that "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes."). And Jones's lawyer did not provide ineffective assistance by failing to raise a meritless objection to it. See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

Next, Jones argues that the prosecutor committed misconduct during rebuttal argument by arguing that the way that Jones stored her gun was "not what they teach you at CPL class" and that Jones was "not a responsible gun owner." Jones points out that there was no testimony related to what is taught during a CPL class. It is improper for a prosecutor to argue "a fact to the jury that is not supported by evidence." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). However, "[o]therwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *Id*. In this case, during closing argument, Jones's lawyer argued:

> Ms. Jones is somebody that we've all agreed is a CPL holder. She's a responsible citizen. She's somebody that went through the training and course and paid for a license, got a weapon registered. She *followed the protocol and the laws of our state*. She followed everything that she's supposed to do . . .

Thus, the prosecutor's statements indicating that Jones was not in compliance with the storage requirements for a CPL holder were in response to the defense argument. As such, we conclude that they do not amount to prosecutorial misconduct and Jones's lawyer was not ineffective for failing to object to them. See *Chelmicki*, 305 Mich App at 69.

## III. DUE PROCESS

### A. STANDARD OF REVIEW

Jones next argues that her constitutional right to due process was violated because the police did not promptly investigate the case, which resulted in the loss of Shields's 911 recording. Jones did not preserve this objection by raising it in the trial court. See *People v Dickinson*, 321 Mich App 1, 15; 909 NW2d 24 (2017). Accordingly, our review is for plain error affecting her substantial rights. See *id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### B. ANALYSIS

Jones contends that the police conducted an inadequate investigation, which resulted in the loss of potentially exculpatory evidence in the form of 911 calls. Specifically, she faults the police for failing to preserve Shields's 911 call and for failing to investigate whether there were other 911

calls related to Shields's erratic driving.[3] However, "[f]or due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). "[T]he police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Id*. Accordingly, in this case, the police had no constitutional duty to investigate the case so as to assist Jones in obtaining the 911 calls.[4]

Alternatively, Jones contends that her defense lawyer was ineffective for failing to request an adverse-inference instruction related to the 911 calls. An adverse-inference instruction permits the jury to infer that material evidence the prosecution fails to preserve for trial would have favored the defendant. *People v Davis*, 199 Mich App 502, 514-515; 503 NW2d 457 (1993), overruled in part on other grounds *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012). However, such an instruction is only appropriate in cases where the prosecutor acted in bad faith. *People v Cress*, 250 Mich App 110, 157-158; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678 (2003). Here, there is no evidence of bad faith. Rather, the 911 call recordings were purged after 90 days as part of a routine policy. That routine destruction is not indicative of bad faith. Thus, under the circumstances of this case, an adverse-inference instruction would not be warranted, and Jones's lawyer was not ineffective for failing to request such an instruction. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

## IV. SUFFICIENCY OF THE EVIDENCE

## A. STANDARDS OF REVIEW

Lastly, Jones argues that there was insufficient evidence to sustain her conviction. "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

---

[3] Jones directs this Court to *People v Jordan*, 23 Mich App 375; 178 NW2d 659 (1970). *Jordan* involved the failure to analyze evidence seized from the defendant during his arrest. *Id*. at 382. Jones also cites to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). *Brady* involved the suppression of evidence by the prosecution that is favorable to the defense. *Id*. at 87. Because no evidence was developed in this case, there was no evidence to improperly suppress under *Brady* or to fail to analyze under *Jordan*. As such, neither case is relevant to determining whether Jones's constitutional rights were violated by the police's allegedly inadequate investigation.

[4] We note also that, although Jones asserts that a more prompt and thorough police investigation would have led to recordings of exculpatory 911 calls, her position is based on pure conjecture.

## B. ANALYSIS

"To perpetrate a felonious assault, a defendant must commit '(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.' " *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "Battery has been defined as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted). MCL 750.82 describes a dangerous weapon for the crime of felonious assault as "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon . . . ." Here, Shields testified that a black woman in an Equinox pulled up beside her vehicle with the passenger side window rolled down. The woman waved a gun and pointed it in her direction. Shields testified that she feared she would be shot. Although Jones argues that Shields's testimony was inconsistent and notes that she was convicted of theft and drug-related crimes, her arguments go toward Shields's credibility. We "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The jury found Shields to be credible and her testimony was sufficient to establish the elements of felonious assault.

Jones also argues that there is insufficient evidence that she is the person who committed the felonious assault. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Shields's failed to identify Jones in a photographic lineup. However, at the time of the altercation, Shields called 911 and reported the license plate number of the vehicle driven by the woman with the gun. Shields repeated that information to the officer who questioned her regarding the incident. The license plate was registered to Jones. When the police located Jones at an apartment, they questioned her regarding the incident. During that conversation, Jones admitted that she had owned an Equinox. She also admitted that she had been involved in a traffic incident along the stretch of highway with a woman driving a red Porsche. Finally, she admitted owning a gun at the time of the incident. Finally, Jones's aunt testified that she was on the phone with Jones during the altercation. That evidence, although circumstantial, is sufficient to identify Jones as the woman who pointed a gun at Shields after pulling alongside her vehicle.

On appeal, Jones argues that her admissions to the police were barred by the *corpus delicti* rule. She suggests that, without those admissions, there is insufficient evidence of her identity as the perpetrator. "The *corpus delicti* rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). Specifically, the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury." *Id*. "However, proof of the identity of the perpetrator of the act or crime is not a part of the *corpus delicti*. It is sufficient to show that the crime was committed by someone." *People v Washington*, 514 Mich 583, 605; 22 NW3d 507 (2004) (quotation marks and citation omitted). The *corpus delicti* rule is confined to confessions, which contain statements of guilt, and not admissions of facts. *Id*. at 605-606.

Jones's admissions to the police were not a confession. Rather, she told the police that she was present at the altercation, stating: (1) she drove the Equinox; (2) was involved in an altercation with a red Porsche; and (3) possessed a CPL and gun. She expressly denied pointing a gun at Shields and claimed that she did not have a gun in the car during the altercation. As such, it is plain that her statements were "merely admissions, which needed other facts to give them convicting force, and therefore were admissible on the *corpus delicti*." *Id*. at 606 (quotation marks and citation omitted, emphasis removed).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly